UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALAN R. HANSEN,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | CASE NO. C17-5379-MAT<br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

Plaintiff Alan R. Hansen proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1968.[1] He has a high school diploma, community college education in photography, and vocational training related to computers and forklift and warehouse

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

management. (AR 37.) He previously worked as a retail clerk. (AR 179.)

Plaintiff protectively applied for SSI and DIB in October 2013. (AR 78, 155-56, 158-63.) The applications were denied initially and upon reconsideration, and Plaintiff timely requested a hearing. (AR 106-08, 110-13.)

On October 1, 2015, ALJ David Johnson held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 32-77.) On November 23, 2015, the ALJ issued a decision finding Plaintiff not disabled. (AR 10-27.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on March 16, 2017 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2012, the alleged onset date. (AR 12.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's major depressive disorder, generalized anxiety disorder, hypertension, gout, bilateral knee abnormality, spinal abnormality, and obesity. (AR 12-14.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 14-16.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work that does not require standing or walking for more than four hours in an eight-hour workday. He can at most occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. He cannot climb ladders, ropes, or scaffolds. He cannot be exposed to hazards such as open machinery or unprotected heights. He cannot have concentrated exposure to extreme cold or vibration. He can perform simple, routine tasks that do not require more than occasional, superficial interaction with the general public or co-workers. (AR 17.) With that assessment, the ALJ found Plaintiff unable to perform any of his past relevant work. (AR 24.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of transitioning to representative occupations including production assembler, inspector and hand packager, and office helper. (AR 25-26.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) discounting his subjective symptom testimony; and (2)

assessing certain medical evidence and opinions.[2] The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## Subjective symptom testimony

The ALJ discounted Plaintiff's subjective symptom testimony because (1) some of Plaintiff's alleged physical limitations were not corroborated by objective medical evidence; (2) Plaintiff sought little treatment for mental symptoms he alleges are disabling, and much of the objective evidence related to his mental conditions is unremarkable; and (3) Plaintiff's symptoms were reported inconsistently and his activities are inconsistent with his alleged limitations. (AR 18-21.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff argues that the ALJ erred in focusing on how his allegations of left foot and toe pain, gout, hypertension, and back pain were not corroborated by the record, because the ALJ's analysis of these issues "is not a convincing reason to reject [Plaintiff's] testimony about the symptoms and limitations associated with his bilateral knee impairments." Dkt. 11 at 9. But the ALJ did not cite this evidence as a reason to discount Plaintiff's testimony about his knee impairments. The ALJ explained that some limitations attributable to the knee impairments were supported by the medical record, and that the RFC assessment accounted for the limitations established by the record. (AR 18-19.) The ALJ did not err in considering the extent to which Plaintiff's allegations were consistent with the medical evidence, as one reason among multiple reasons. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain

---

[2] Plaintiff's opening brief also challenges the ALJ's RFC assessment and step-five findings, but in doing so only reiterates arguments made elsewhere. Dkt. 11 at 16-17. Accordingly, these issues will not be analyzed separately.

testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Next, Plaintiff goes on to argue that the ALJ erred in finding that his lack of mental health treatment undermined his allegations of disabling mental limitations, because the ALJ did not ask Plaintiff why he did not receive more treatment. Dkt. 11 at 9-10. But the ALJ did acknowledge Plaintiff's lack of insurance at times, and noted that even when Plaintiff did have insurance, he did not seek treatment for his depression or anxiety, but did seek treatment for other conditions. (AR 19.) Under these circumstances, the ALJ reasonably concluded that Plaintiff's mental impairments themselves did not prevent Plaintiff from seeking treatment, and Plaintiff has offered no other explanation for his failure to seek treatment other than to reference unnamed "difficulties" he faced in the process. Dkt. 11 at 10. Plaintiff has not shown that the ALJ's rationale is unreasonable, and therefore it shall not be disturbed. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld. In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.").

With respect to the ALJ's finding that much of Plaintiff's objective evidence related to his mental impairments did not corroborate his allegations, Plaintiff argues that the ALJ failed to discuss the clinical findings that do support Plaintiff's allegations. Dkt. 11 at 10-11. But Plaintiff's opening brief does not identify any clinical findings that support his allegations, and instead summarizes his own statements at length. Dkt. 11 at 11-16. This portion of Plaintiff's brief does not establish error in the ALJ's decision, because he cites no evidence contrary to the ALJ's conclusion. The bare assertion that such evidence exists is insufficient. *See Indep. Towers of*

*Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to address assertions unaccompanied by legal arguments: "We require contentions to be accompanied by reasons."). Furthermore, the ALJ did cite evidence that supports Plaintiff's allegations to some degree, and indicated that the RFC assessment accounts for those limitations. (AR 20-21.) Although Plaintiff states conclusorily that the ALJ failed to account for all of his mental health symptoms (Dkt. 11 at 11), he fails to identify any particular limitation that the ALJ omitted. Thus, Plaintiff has failed to identify any specific error in the ALJ's assessment of the medical evidence related to his mental conditions. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should[er] injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.").

Finally, Plaintiff notes that the ALJ described inconsistencies within his testimony and between his testimony and his activities, but claims that "none of the alleged inconsistencies selected by the ALJ are meaningfully inconsistent with [his] testimony, nor are any of his activities transferable to any type of full-time work skills." Dkt. 11 at 10. Both of these arguments fail. First, the ALJ did not err in citing inconsistencies within Plaintiff's testimony as a reason to discount his statements. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ may consider a claimant's inconsistent or non-existent reporting of symptoms). The ALJ did not err in considering that Plaintiff denied experiencing hallucinations to a psychologist, but then described auditory hallucinations at the hearing. (AR 19 (referencing AR 56-58, 268).)

Second, that none of the activities referenced by the ALJ indicates transferable work skills does not suggest that the ALJ erred, because the ALJ cited those activities as evidence of inconsistency. This is a valid, separate reason to cite a claimant's activities. *See Orn v. Astrue*,

495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"). Accordingly, Plaintiff has not identified an error in the ALJ's reasoning regarding his activities, and the activities cited by the ALJ constitute a clear and convincing reason to discount Plaintiff's subjective testimony.

Because the ALJ provided multiple clear and convincing reasons to discount Plaintiff's subjective testimony, the ALJ's findings in this respect are affirmed.

Medical evidence

Plaintiff raises several challenges to the ALJ's assessment of the medical evidence. First, Plaintiff argues that the ALJ erred in finding that his attention deficit hyperactivity disorder (ADHD) was not severe. Next, Plaintiff goes on to contend that the ALJ erred assessing all of the medical opinion evidence, either in discounting it or crediting it.

The Court will address each argument in turn.

1. ADHD

The ALJ acknowledged that the record documented Plaintiff's history of ADHD, but found that because this condition appeared to be well-controlled with medication (when it was available to Plaintiff), this condition did not cause significant limitations. (AR 13.) The ALJ also noted that Plaintiff's primary care physician refused to prescribe ADHD medication for Plaintiff because he did not have "a good reason why [Plaintiff] needs to be on it." (*Id.* (citing AR 305).)

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling 85-28).

Plaintiff argues that the ALJ's reasoning is "illogical" because "it makes no sense to find that [his] ADHD is non-severe because it would theoretically be well-controlled with medication that [he] is unable to obtain." Dkt. 11 at 2-3. Plaintiff's argument fails to acknowledge that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Allen v. Comm'r of Social Sec. Admin.*, 498 Fed. Appx. 696, 697 (9th Cir. Nov. 19, 2012) ("The record shows Allen's mental impairment can be adequately controlled by medication. Therefore, Allen's mental impairment cannot be considered to be severe." (citing *Warre*, 439 F.3d at 1006)).

Furthermore, Plaintiff does not acknowledge the remainder of the ALJ's rationale, which was that Plaintiff's treating physician stopped prescribing ADHD medication because he was not certain he needed it, and referred him to a psychiatrist for further evaluation. (AR 305.) This evidence supports the ALJ's conclusion that Plaintiff's ADHD was not severe.

Accordingly, Plaintiff has not established error in the ALJ's step-two findings. Although Plaintiff argues that the ALJ erred in failing to account for the limitations caused by his ADHD in the RFC assessment, he does not identify which limitations were erroneously omitted, and has thus failed to state an allegation of error in the RFC assessment with the requisite specificity. *See Valentine*, 574 F.3d at 692 n.2 ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should[er] injuries, besides the limitations already listed in the

RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.").

2. Enid Griffin, Psy.D.

Dr. Griffin examined Plaintiff in March 2014 and wrote a narrative report describing Plaintiff's symptoms and examination results. (AR 247-50.) Dr. Griffin concluded that Plaintiff would need job accommodations for his dyslexia and ADHD, but that there was "no indication of significant memory issues which would impede on his ability to handle simple tasks. His ability to reason and adapt is slightly limited at this time due to his mental health symptoms." (AR 249.)

The ALJ gave great weight to Dr. Griffin's opinion that Plaintiff could perform simple tasks, but discounted the remainder of the opinion indicating moderate limitations as inconsistent with the normal mental status examination results. (AR 22.) The ALJ also rejected Dr. Griffin's opinion regarding Plaintiff's need for accommodations due to dyslexia and ADHD, in light of the ALJ's finding that neither of these conditions was a severe impairment. (AR 13-14.)

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Plaintiff argues that the ALJ erred in discounting Dr. Griffin's opinion regarding his need for medication to treat his ADHD. Dkt. 11 at 3. But Dr. Griffin did not provide an opinion regarding Plaintiff's need for medication: she addressed his potential need for accommodations for "any future training and/or employment." (AR 249.) Plaintiff cites no evidence of record related to what kind of workplace accommodations Plaintiff would need for ADHD or dyslexia. Accordingly, the Court finds that Plaintiff has failed to meet his burden to show harmful error in the ALJ's assessment of Dr. Griffin's opinion.

3. <u>Gary Gaffield, D.O.</u>

Dr. Gaffield performed a physical examination of Plaintiff in March 2014, and wrote a narrative report describing his symptoms and examination results. (AR 252-56.) Dr. Gaffield diagnosed Plaintiff with bilateral knee pain and found that he was limited to standing/walking for four hours out of a workday due to his knee problems, and could sit with no limitations. (AR 255-56.) Dr. Gaffield opined that Plaintiff would need to, *inter alia*, avoid working on an unprotected surface with major obstacles in his pathway. (AR 256.)

The ALJ rejected Dr. Gaffield's opinion regarding Plaintiff's need to avoid working on an unprotected surface with major obstacles in his pathway, citing Dr. Gaffield's examination results indicating Plaintiff's normal gait and balance. (AR 21.) The ALJ gave great weight to the remainder of Dr. Gaffield's opinion. (*Id.*)

Plaintiff argues that the ALJ erred in crediting Dr. Gaffield's opinion regarding his standing/walking abilities, because Dr. Gaffield did not explain how he would be able to perform

this type of activity even if he could not fully extend his left knee, had bilateral knee weakness, and could not hop, bend, or squat. Dkt. 11 at 5.

Plaintiff has not identified an error in the ALJ's assessment of Dr. Gaffield's opinion. Dr. Gaffield noted that his knee problems caused some limitations, but that he nonetheless retained the ability to perform some activities. Plaintiff has not identified an ambiguity in Dr. Gaffield's opinion, and has not shown that the opinion does not constitute substantial evidence that the ALJ was not entitled to rely upon in assessing his RFC. Plaintiff has not met his burden to show harmful error in the ALJ's decision, and the Court therefore affirms the ALJ's assessment of Dr. Gaffield's opinion.

4.  Daniel Neims, Psy.D.

Dr. Neims examined Plaintiff in July 2014 and completed a DSHS form opinion and other forms regarding Plaintiff's psychological functioning. (AR 260-76.) Dr. Neims found that *inter alia* Plaintiff had marked limitations in his ability to communicate and perform effectively in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and maintain appropriate behavior in a work setting. (AR 262.) Dr. Neims also indicated that Plaintiff demonstrated a "strong disability conviction." (AR 264.)

The ALJ discounted Dr. Neims' opinion in light of the mostly normal findings on the mental status examination, and as inconsistent with other evaluation reports describing Plaintiff as cooperative and pleasant. (AR 23.) The ALJ also found Dr. Neims' opinion to be inconsistent with Plaintiff's contemporaneous activities, specifically socializing three times a week, chatting with people in a coffee shop, fishing, hunting, lifting, snorkeling, reading, working on a computer, and maintaining his home. (*Id.*) The ALJ found that the inconsistencies between the record and Dr. Neims' opinion suggested that Dr. Neims relied on Plaintiff's self-report, which was

discounted for reasons discussed above. (*Id.*)

Plaintiff argues that the ALJ erred in finding Dr. Neims' opinion to be inconsistent with the mental status examination findings, because "Dr. Neims described many clinical findings which support his opinion about [Plaintiff's] limitations." Dkt. 11 at 6. Plaintiff's opening brief does not identify which findings these may be, and Dr. Neims did not cite any particular findings as support for his opinion. As noted by the ALJ, most of the mental status examination findings were normal, and the "borderline" concentration finding is not necessarily connected to the marked limitations noted by Dr. Neims. (*See, e.g.*, AR 263.) The ALJ did not err in considering the degree to which Dr. Neims' opinion was corroborated by his own examination findings. *See, e.g., Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province").

Furthermore, the ALJ did not err in considering whether Dr. Neims' opinion was consistent with the longitudinal record and his activities, even though Plaintiff emphasizes that Dr. Neims' opinion was based on an independent examination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

Finally, Plaintiff argues that the ALJ's finding that Dr. Neims relied on his self-report was not supported by substantial evidence. Dkt. 11 at 7. On the contrary, the content of Dr. Neims' report contains many references to Plaintiff's self-report. (*See, e.g.*, AR 264-65.) To the extent that Dr. Neims relied on Plaintiff's self-report, which the ALJ properly discounted as discussed

1 *supra*, the ALJ was entitled to discount Dr. Neims' opinion. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

Because the ALJ provided multiple specific and legitimate reasons to discount Dr. Neims' opinion, the Court finds that the ALJ did not err in assessing this opinion.

5. <u>Russell Faria, D.O.</u>

Dr. Faria examined Plaintiff in July 2015 and wrote a narrative report describing Plaintiff's symptoms and limitations. (AR 279-85.) Dr. Faria opined that Plaintiff had no restriction as to sitting, standing, or walking, and could lift 20 pounds occasionally and 10 pounds frequently. (AR 284.)

The ALJ found that Plaintiff was more limited as to standing and walking than indicated by Dr. Faria, but gave great weight to the remainder of Dr. Faria's opinion. (AR 21.)

Plaintiff argues that the ALJ erred in crediting most of Dr. Faria's opinion, because it was inconsistent with his clinical findings, Dr. Gaffield's clinical findings, and Plaintiff's own testimony. Dkt. 11 at 7. This argument lacks specificity, because Plaintiff's opening brief does not identify any particular inconsistency with any clinical findings, and the findings cited in the Reply are not necessarily inconsistent with Dr. Faria's opinion. Dkt. 14 at 5-6. Furthermore, as explained *supra*, the ALJ properly discounted Plaintiff's testimony, and therefore inconsistency with Plaintiff's testimony does not amount to a reason to discount Dr. Faria's opinion. Plaintiff has not met his burden to show harmful error in the ALJ's assessment of Dr. Faria's opinion.

6.   Marco Pocholo Valencia, M.D.

Plaintiff points to various diagnoses and observations recorded by Dr. Valencia in his treatment notes, and argues that the ALJ erred in failing to acknowledge that these treatment notes were consistent with other medical evidence and with Plaintiff's testimony. Dkt. 11 at 7-8.

The ALJ's decision contains many references to Dr. Valencia's treatment notes, however. (AR 18-20.) The ALJ also discussed the diagnoses made by Dr. Valencia, in setting forth his step-two findings. (AR 12 (listing the severe impairments, including several diagnosed by Dr. Valencia), 13 (citing AR 305).) Plaintiff has cited no authority requiring the ALJ to interpret or refer to Dr. Valencia's notes in his preferred way. *See* Dkt. 14 at 6. Plaintiff has not shown that the ALJ's treatment of Dr. Valencia's notes contains any error, let alone a harmful error, and he has therefore failed to meet his burden.

7.   Brett Valette, Ph.D.

Dr. Valette examined Plaintiff in July 2015 and wrote a narrative report describing Plaintiff's psychological symptoms and limitations. (AR 290-93.) Dr. Valette opined that Plaintiff could perform tasks with simple, detailed, or complex instructions, and that he could interact appropriately with supervisors, co-workers, and the public. (AR 293.)

The ALJ rejected Dr. Valette's opinion that Plaintiff could interact appropriately with co-workers and the public, finding that portion of the opinion to be inconsistent with Dr. Valette's mental status examination testing. (AR 23.) The ALJ also rejected Dr. Valette's opinion that Plaintiff could perform tasks with detailed or complex instructions. (*Id*.) The ALJ gave great weight to the remainder of Dr. Valette's opinion. (*Id*.)

Plaintiff argues that the ALJ erred in crediting the portion of Dr. Valette's opinion wherein he opined that Plaintiff could interact appropriately with supervisors, because this portion of the

opinion is inconsistent with Dr. Valette's findings and the rest of the record. Dkt. 11 at 8. Again, Plaintiff has not identified any specific inconsistency and has failed to identify any error. None of Dr. Valette's findings specifically pertain to Plaintiff's ability to interact with appropriately with supervisors, and thus do not directly contradict Dr. Valette's conclusions. Plaintiff has not met his burden to show harmful error in the ALJ's assessment of Dr. Valette's opinion.

8. <u>State agency consultants</u>

The ALJ rejected portions of the State agency opinions, specifically the opinion that Plaintiff would be able to travel, finding that this opinion was inconsistent with Plaintiff's cognitive limitations. (AR 24.) The ALJ also rejected the State agency opinions to the extent that they indicate limitations caused by Plaintiff's ADHD and dyslexia. (AR 13-14.) The ALJ assigned great weight to the remainder of the State agency opinions. (AR 24.)

Plaintiff argues that the ALJ erred in rejecting the State agency opinions regarding limitations caused by ADHD because he did not have access to the ADHD medication that controls the condition, and because their opinion regarding dyslexia limitations was consistent with the evidence as a whole. Dkt. 11 at 4.

Plaintiff's argument fails to identify a harmful error in the ALJ's decision. As discussed *supra*, the ALJ did not err in considering whether Plaintiff's ADHD can be controlled by medication, and in rejecting limitations caused by a condition that can be controlled by medication. Furthermore, Plaintiff cites no portion of the record that establishes the existence of dyslexia limitations (or even a medically valid diagnosis of dyslexia), and thus has not shown that the State agency opinions regarding dyslexia limitations is supported by substantial evidence. Finally, as noted by the Commissioner, the RFC assessment and VE testimony addressed potential dyslexia limitations, by limiting Plaintiff to performing simple, routine tasks, in jobs that would involve

oral rather than written instructions. Dkt. 13 at 10. Therefore, the Court rejects Plaintiff's challenge to the ALJ's assessment of the State agency opinions.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 6th day of February, 2018.

Mary Alice Theiler
United States Magistrate Judge